UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

FILED
JAMES J. WALDRON, CLERK
MAR 17 2016
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

| | |
|---|---|
| In Re:<br><br>Joseph P. Whittick,<br><br>             Debtor. | Case No.:      14-32124-ABA<br><br>Chapter:      7 |
| Joseph D. Marchand, Chapter 7 trustee,<br><br>             Plaintiff,<br><br>v.<br><br>Joseph P. Whittick and Camille Lynn Whittick,<br><br>             Defendants. | Adv. No.:     15-2146-ABA<br><br>Judge:      Andrew B. Altenburg, Jr.<br><br>Hearing Date:  March 15, 2016 |

## MEMORANDUM DECISION

### I.     INTRODUCTION

Joseph D. Marchand, the chapter 7 trustee ("Trustee"), filed a motion for judgment on the pleadings ("Motion") on all three of his counts alleged against the Debtor/Defendant Joseph P. Whittick ("Debtor") and his wife, the co-defendant Camille Lynn Whittick. The defendants responded with a cross motion for judgment on the pleadings ("Cross-Motion"). The court concludes that the Motion is granted in part only to the extent that the court finds that the loan proceeds/funds are property of the estate, but denied as to all other matters. The Cross-Motion is denied in its entirety.

### II.     JURISDICTION AND VENUE

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (E), and (O). Venue is proper in this court pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are 11 U.S.C.

§§ 542 and 549. Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.


### III.   PROCEDURAL HISTORY

On September 1, 2015, the Trustee file the Complaint in this adversary proceeding. The Trustee seeks turnover from the Debtor of funds pursuant to section 542 of the Bankruptcy Code. The Trustee also seeks avoidance of a transfer to the Debtor's wife as an unauthorized postpetition transfer, pursuant to section 549 of the Bankruptcy Code. In connection therewith, the Trustee seeks an accounting of the Debtor's and his wife's records to assure that he can identify all mediate transfers that might be avoidable pursuant to sections 549 and 550 of the Bankruptcy Code. Finally, the Trustee seeks costs of suit and reasonable attorney fees, and such other and further relief as is just and equitable.

On October 2, 2015, the Defendants filed an Answer admitting to all of the facts[1] of the Complaint but denying any liability. The parties declined mediation and thereafter, the Trustee filed his Motion. The defendants responded with their Cross-Motion. A hearing was held on the Motion and Cross-Motion on March 15, 2016 at which time the parties presented their arguments to the court. The matter is now ripe for consideration.

### IV.   FACTS

The Debtor applied for and was approved for a loan from his Public Employees' Retirement System ("PERS") retirement plan prior to his filing for bankruptcy protection. PERS issued a check to the Debtor in the amount of $13,642 (the "Check"). The Check was issued on October 29, 2014 and received by the Debtor. Loan payments were to start on December 1, 2014. Doc. 1-1. The Debtor filed his individual chapter 7 bankruptcy case on October 30, 2014 (the "Petition Date"). The Debtor had not deposited or cashed the Check by the Petition Date. The Debtor signed his Voluntary Chapter 7 Bankruptcy Petition on the day it was filed. Doc. 1 in the main bankruptcy case, Case No. 14-32124.[2] While the Debtor disclosed an interest in his PERS account on his bankruptcy Schedule B, he did not disclose that he was in possession of the Check.

On the day after the Petition Date, October 31, 2014, the Debtor deposited the Check into in a joint bank account owned by him and his wife. Then, on November 3, 2014, the Debtor transferred $10,750 of the funds from the PERS loan to an account held solely by the Debtor's wife.

---

[1] The defendants denied one fact, but only to the extent that the Trustee had alleged that the funds were deposited on October 31, 2015 rather than October 31, 2014. As 2014 appears to be the correct year of the transfer, the court assumes the Trustee's alleged fact of 2015 to be a typo.

[2] "A bankruptcy court may take judicial notice of the docket of the main case in an adversary proceeding." *In re Flickinger*, No. 1:09-BK-08739MDF, 2010 WL 3431659, at *2 (Bankr. M.D. Pa. Aug. 30, 2010) (citing *In re Di Vittorio*, 430 B.R. 26 (Bankr.D.Mass.2010)); Federal Rule of Evidence 201. *See also In re Lenz*, 448 B.R. 832, 833-34 (Bankr. D. Or. 2011); *In re Knight*, No. 10-30580-RLD7, 2010 WL 3733534, at *1 (Bankr. D. Or. Sept. 17, 2010) *aff'd*, No. ADV 10-03092, 2011 WL 6934480 (B.A.P. 9th Cir. Nov. 7, 2011).

On June 16, 2015, the Trustee filed a notice of abandonment of the Debtor's 1964 Ford Thunderbird, stating a fair market value of $22,230, a lien of $12,021, and the Debtor's claim of exempt equity under section 522(d)(2) in the amount of $3,675, and under section 522(d)(5) in the amount of $6,633. On June 30, 2015, the Trustee filed a notice of assets. On February 29, 2015, the Debtor filed amended schedules A, B and C, exempting the funds from the PERS loan in their entirety under section 522(d)(10)(E), and $11,786 of the value of the Thunderbird under section 522(d)(5).

## V.    DISCUSSION

The Trustee seeks turnover from the Debtor of the funds from the PERS loan pursuant to section 542 of the Bankruptcy Code, alleging that the funds represent a prepetition asset. He asserts that, once received, the funds ceased to enjoy the protection afforded to ERISA-qualified accounts.[3] The Trustee also seeks avoidance of the transfer of the funds to the Debtor's wife as an unauthorized postpetition transfer, pursuant to section 549 of the Bankruptcy Code. The Trustee seeks an accounting of the Debtor's and his wife's records to assure that he can identify all mediate transfers that might be avoidable pursuant to sections 549 and 550 of the Bankruptcy Code.

The defendants argue that since the loan proceeds were not received until after the bankruptcy filing, they are not property of the estate, citing *Barnhill v. Johnson*, 503 U.S. 393 (1992). They also aver that the funds are exempt under section 522(d)(10)(E), having amended their Schedule C on February 29, 2016 to so exempt. They state that if the court does not find that the funds are exempt under section 522(d)(10)(E), then they will amend Schedule C again to exempt $11,786.97 of the funds under section 522(d)(5).

The Trustee responds that to determine what is property of the estate, one does not look to the time of transfer, but to when the debtor gained an interest in the funds. As this debtor obtained the loan approval and Check prepetition, that interest became property of the estate. The Trustee also argues that section 522(d)(10)(E) is not applicable, as it is not a pension distribution. Moreover, he argues that the Debtor should not be permitted to now exempt the funds as he concealed the property by not disclosing them on his original schedules, amending Schedule B 16 months into the case and six months after the Trustee filed this adversary proceeding, and he amended his exemptions in bad faith. The Trustee avers that permitting amending the exemptions would prejudice creditors and be prejudicial to the Trustee who relied on the original Schedule C in filing this adversary proceeding. He argues that it is bad faith for the Debtor to threaten to amend his Schedule C again, particularly since the wildcard exemption that he would change had been applied to his Thunderbird vehicle, which the Trustee relied upon when abandoning that vehicle. Moreover, the Debtor cannot use section 522(d)(2), applied to the Thunderbird, to the loan proceeds, as that section applies only to vehicles. The Debtor could only shift the $6,633 of the 522(d)(5) exemption used on the Thunderbird to the loan proceeds.

The defendants respond that the loan was not complete until the check was cashed, citing language from a pension information page that states that if the Debtor is not satisfied with the

---

[3] The Trustee did not allege in his fact section that the pension was ERISA-qualified. Whether it was, and why that matters, will be discussed below.

loan amount or repayment schedule when he receives his check, he can cancel the loan by returning the uncashed check. But by cashing the check he would be agreeing to the loan amount and the terms and conditions of the repayment schedule. Therefore no interest was gained until the Debtor cashed the check postpetition.

A motion for judgment on the pleadings is authorized by Federal Civil Rule of Procedure 12(c), incorporated into adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). When based on the theory that the plaintiff failed to state a claim, then a motion on the pleadings is reviewed under the same standard that applies to a motion to dismiss under Civil Rule 12(b)(6). *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146-47 (3d Cir. 2013). But otherwise, the Third Circuit has generally applied a summary judgment standard, that "[t]he facts, and any inferences drawn from them, are viewed in the light most favorable to the nonmoving party and the motion should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law.'" *Perez v. Griffin*, 304 Fed. Appx. 72, 74 (3d Cir. 2008) (quoting *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004)). In any case, if a court considers attachments to parties' memorandums of law and supplements, then it should consider the motions under the summary judgment standard. Fed. R. Civ. P. 12(d).

Here, though the defendants appear to be claiming a failure to state claims, as the parties attached documents to their pleadings and submissions, the court will apply a summary judgment standard.

### A. Count One – Turnover

Section 542 provides for turnover from "an entity, other than a custodian, in possession, custody, or control, during the case, of property of the estate that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title[.]" 11 U.S.C. § 522(a). The property must be turned over to the trustee, "unless such property is of inconsequential value or benefit to the estate." *Id.*

A section 542(a) claim requires the trustee to prove

(1) the property is in the possession, custody or control of another entity;
(2) the property can be used in accordance with the provisions of section 363; and
(3) the property has more than inconsequential value to the debtor's estate.

*In re Steel Wheels Transp., LLC*, 06-15377 DHS, 2011 WL 5900958, at *5 (Bankr. D.N.J. Oct. 28, 2011) (citing *United States v. Whiting Pools*, 462 U.S. 198 (1983)).

Here, the funds are held by one or both of the defendants,[4] the funds can be used to pay creditors, and at $13,642, the property is not inconsequential. *See In re H. Wolfe Iron & Metal Co.,* 64 B.R. 754, 758 (Bankr. W.D. Pa. 1986) (finding $6,517 not inconsequential). Accordingly, the Trustee may recover the property under section 542, provided it is property of the estate and no other defense applies. *See In re Lucci,* 11-34787 MBK, 2012 WL 733806, at *2 (Bankr. D.N.J. Mar. 5, 2012) (holding that funds received by the debtors likely are property of the estate and thus subject to section 542(a)'s turnover provision).

### 1. Are the funds property of the estate?

The Trustee argues that the Debtor obtained an equitable interest in the loan proceeds by virtue of the granting of the loan prepetition, citing section 541.

Section 541(a) provides that "[a]ll legal or equitable interests of the debtor in property as of the commencement of the case" are included in property of the estate. 11 U.S.C. § 541(a)(1). Property becomes property of the estate regardless of location or by whom held. 11 U.S.C. § 541(a). Section 541(a)(6) provides that property of the estate also includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

This combination of section 541(a)(1) and 541(a)(6) results in including in property of the estate such property as residual commissions earned prepetition but paid postpetition, *see In re Bosack,* 454 B.R. 625 (Bankr. W.D. Pa. 2011); the postpetition proceeds of the sale of debtor's real property, *see In re Steel Wheels Transp., LLC,* 06-15377 DHS, 2011 WL 5900958; stock options not exercisable until postpetition, *see In re Michener,* 342 B.R. 428, 429 (Bankr. D. Del. 2006), and *In re Taronji,* 174 B.R. 964, 967 (Bankr. N.D. Ill. 1994); and life insurance proceeds, *see In re No. 1 Con-Struct Corp.,* 88 B.R. 452, 453 (Bankr. S.D. Fla. 1988) (where the insured dies postpetition, the proceeds of the policy become property of the estate pursuant to section 541(a)(6)).

While the court found no cases concerning a check issued prepetition and negotiated postpetition, it finds that the Debtor's prepetition future interest in the PERS loan became property of the estate pursuant to section 541(a)(1), with the proceeds of that property becoming property of the estate pursuant to section 541(a)(6) upon receipt of the funds postpetition. *See Meoli v. MBNA Bank, N.A. (In re Wells),* 382 B.R. 355, 362 (B.A.P. 6th Cir. 2008), *aff'd,* 561 F.3d 633 (6th Cir. 2009):

> While it is true that a debtor's potential credit (i.e., an offer of credit) is not an equitable interest that becomes property of the estate, if the debtor accepts the offer

---

[4] The Debtor already has a duty to "surrender to the trustee all property of the estate and recorded information, including books, documents, records and papers, relating to property of the estate." 11 U.S.C. § 521(a)(4). The Trustee did not allege that he demanded turnover of the funds pursuant to section 521 and was refused, normally a precursor to a section 542(a) complaint, *see, e.g., In re Wolfe,* BR 12-02533-JDP, 2013 WL 1410385, at *4 (Bankr. D. Idaho Apr. 8, 2013), as surrender of property of the estate by the debtor may be requested by motion. *In re Pilate,* 487 B.R. 345, 352 (Bankr. D.D.C. 2013) (noting that Rule 7001(1) requires an adversary proceeding to recover money or property "other than a proceeding to compel the debtor to deliver property to the trustee).

prepetition or exercises a contract right to borrow funds from a credit card account,
the debtor then has at least an equitable interest in the funds.

Here the prepetition loan approval gave the Debtor an interest in funds that became
property of the estate under section 541(a)(1) and (a)(6) when the funds were received postpetition.
Though decided under the former Bankruptcy Act, the Supreme Court in *Segal v. Rochelle*, 382
U.S. 375 (1966), held that property should be regarded as property of the estate if "it is sufficiently
rooted in the prebankruptcy past and so little entangled with the bankrupts' ability to make an
unencumbered fresh start[.]" *Id.*, at 380. The Third Circuit follows *Segal*. *See Ctys. Contracting &
Const. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1057 (3d Cir. 1988).

The Debtor applied and was approved for the loan prepetition. That he could have decided
to cancel the loan by returning the check did prevent the interest from becoming property of the
estate. The contingency—cashing the check—was fulfilled, and thereby the equitable interest
became a present interest in the funds. As stated in *Segal*, "To this end the term 'property' has
been construed most generously and an interest is not outside its reach because it is novel or
contingent or because enjoyment must be postponed." *Id.*, at 379. *See Majestic Star Casino, LLC
v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 750-51 (3d Cir. 2013)
(property interest is not outside of bankruptcy's reach only because it is contingent); *Pension
Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement
Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 211 (3d Cir. 2006) (property of the
estate includes contingent and future interests, even if not transferable).

> The statute [section 541] thus makes clear that if a Chapter 7 debtor has a contingent
> right to receive funds in the future, that contingent right belongs to the bankruptcy
> estate and if the contingency occurs postpetition, the funds received belong to the
> Chapter 7 Trustee[.]

*In re Peterson*, 03-65019-MGD, 2006 WL 6589911, at *3 (Bankr. N.D. Ga. July 7, 2006) (holding
that if company policy was to pay terminated employees for unused vacation time, then payment
received would be property of the estate). *See also In re Ryerson*, 739 F.2d 1423 (9th Cir. 1984)
(payment to debtor upon cancellation of insurance agency agreement was property of the estate
even though contingent); *Nelson v. Stillwater Nat'l Bank & Trust Co. (In re Ireland)*, 316 B.R.
766, 2004 WL 2340040, at *4 (B.A.P. 10th Cir. 2004) (table, unpublished) ("When the debtor
executed the Debtor Note, she had a legal and equitable interest in the proceeds of the loan, and
such proceeds would have been property of her estate had she not transferred [prepetition] a large
portion of them to SNB."); *Young v. A-C Prod. Liab. Trust*, 2016 U.S. Dist. LEXIS 14029 (E.D.
Pa. Feb. 5, 2016) (applying *Segal* to exclude from property of the estate asbestos malignancy claim
that was not apparent at time of filing the bankruptcy petition); *In re Schimmel*, 11-10272, 2012
WL 3061488, at *2 (Bankr. N.D. Cal. July 26, 2012) (holding that renewal commissions received
postpetition were received in respect of rights that existed on the petition date, even though
contingent upon the policyholder paying the renewal premium); *In re Campillo*, 4:08-BK-02861-
JMM, 2008 WL 2338316, at *1 (Bankr. D. Ariz. June 6, 2008) (holding that the right to receive
an Economic Stimulus payment existed prepetition and passed to the chapter 7 trustee); *In re
Koonce*, 262 B.R. 850, 856-57 (Bankr. D. Nev. 2001) (holding that future right to receive annuity
lottery payments was property of the estate under section 541(a)(1), since the debtor had the right

to receive them as of the filing of the case). *But see Drewes v. Vote (In re Vote)*, 261 B.R. 439, 443 (B.A.P. 8th Cir. 2001), *aff'd*, 276 F.3d 1024 (8th Cir. 2002) (stating that *Segal* should be limited to finding a right of a tax refund to be property of the estate).

The defendants cite *Barnhill v. Johnson*, 503 U.S. 393 (1992), for the proposition that a transfer made by check occurs when the check is honored, not when it is received. Therefore, the loan proceeds did not become property of the estate until the Check was cashed. But *Barnhill* is concerned with when a transfer of property of the estate occurs (for the purposes of a preference), while this court is concerned with when a debtor obtains an interest in property that then becomes property of the estate.

The defendants' argument that the loan was not complete, and therefore no interest in the proceeds became property of the estate, until the Debtor cashed the check ignores that the loan was approved prepetition, evidenced by the issuance of the check.[5] The Debtor's right to return the check does not change that the loan was approved prepetition.

Finally, the defendants argued that the check issued was akin to an offer of credit, such as where a person receives a convenience check in the mail from a credit card company that is accepted upon negotiation of the check. But that is not the situation here. Rather than the process originating with a creditor offering credit to a person unsolicited, here the Debtor applied for a loan, a process completed when PERS approved the loan and issued a check. That he agreed to repayment terms by cashing the check does not affect when his interest in the proceeds arose.

Lastly, though the parties did not raise it, application of section 541(c)(2) does not change this result. Section 541(c)(2) excludes from certain property of the estate spendthrift trusts, such as the pension at issue here, as follows:

> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
>> (A) that restricts or conditions transfer of such interest by the debtor; or
>> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.
>
> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

---

[5] There may have been other documentation of approval, but neither of the parties submitted anything. Certainly, a check would not have been cut had the loan been denied.

11 U.S.C.A. § 541(c).

If the pension plan is ERISA-qualified, as the Trustee inferred, then section 541(c)(2) would apply to exclude the pension fund from property of the estate. *See Patterson v. Shumate*, 504 U.S. 753 (1992) (ERISA-qualified plans meet the 541(c)(2) standard); *Risoldi v. Risoldi*, 320 N.J. Super. 524, 532 (App. Div. 1999) (stating that NJ PERS plan complies with the requirements of ERISA).[6]

The court need not do so though because section 541(c)(2) only excludes from property of the estate the trust assets themselves, not the distributions. *Velis v. Kardanis*, 949 F.2d 78, 81-82 (3d Cir. 1991). Certainly if distributions do not retain the fund's status as not included in property of the estate, proceeds of a loan would not.

> With respect to the pension plan and the Keogh plan, we conclude that, to the extent the assets in these plans have already been distributed to or for the benefit of the debtor, the debtor no longer has available the protections which might otherwise have been accorded under the ERISA statute. Section 541(c)(2) requires recognition of restrictions upon transfer which are enforceable by law; it does not operate to require non-recognition of transfers which have already occurred, nor does it apply to assets in the possession of the debtor without restrictions. Here, it is undisputed that, shortly after the bankruptcy petition was filed, the debtor withdrew substantially all of the funds in his pension plan, Keogh plan and IRA, and used the money to purchase the cooperative apartments—not as pension plan assets, or as part of the debtor's estate, but for his own purposes. To that extent, there can be no doubt that these monies came into the unrestricted possession of the debtor, and were no longer pension assets.

*Velis v. Kardanis*, 949 F.2d at 82. *See Trucking Employees of N. Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52, 55-56 (3d Cir. 1994) (holding that ERISA's anti-alienation provisions applied only to actions against the plan, not the distributions to the beneficiary); *Eisenberg v. Houck (In re Houck)*, 181 B.R. 187, 190 (Bankr. E.D. Pa. 1995); *In re Comp*, 134 B.R. 544, 551 (Bankr. M.D. Pa. 1991) ("Once access is triggered, the interest in the trust can no longer be properly excluded under § 541(c)(2) because the debtor now has a present right to payment; only an exemption under § 522(d)(10)(E) is available to the debtor."). *See also In re McDonald*, 03-12019C, 2003 WL 23211570, at *2 (Bankr. M.D.N.C. Sept. 27, 2003) (footnote omitted):

> A different situation is presented, however, if funds are withdrawn from a pension or 401(k) plan and in the possession or control of the debtor when a chapter 7 case is filed. Once removed from the pension or 401(k) plan and paid to the employee, the funds no longer are subject to the restriction on alienation contained in the plan documents, and hence not within the exception created by § 541(c)(2). *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1081 (10th Cir. 1994)

---

[6] The defendants attached a document from the New Jersey Department of Treasury regarding pension loans, thus suggesting that the Debtor's PERS account originates with the State of New Jersey. But as the Debtor's name does not appear on the document, and the parties did not identify what state owns the pension plan, the court is reluctant to assume what state's laws apply to the Debtor's pension.

(en banc), *cert. denied,* 514 U.S. 1063 (1995) ("ERISA section 206(d)(1) protects ERISA-qualified benefits from garnishment only until paid to and received by plan participants or beneficiaries."); *NCNB Fin. Servs., Inc. v. Shumate,* 829 F. Supp. 178 (W.D. Va. 1993) (once the line of actual receipt is crossed, ERISA no longer protects funds originating in private pension plan); *In re Bresnahan,* 183 B.R. 506, 507 (Bankr. S.D. Ohio 1995); *In re Collin,* 182 B.R. 763, 768 (Bankr. N.D. Ohio 1995) ("Section 541(c)(2) does not operate to require non-recognition of transfers which have already occurred, nor does it apply to assets in the possession of the debtor without restrictions."). Therefore, even if the loan proceeds received by the Debtor could be regarded as a distribution of benefits from the 401(k) plan,[1] such proceeds nonetheless would not be excluded from the bankruptcy estate under § 541(c)(2) because such proceeds were distributed to Debtor and within his possession and control when this case was filed.

So if not excluded from property of the estate by section 541(c)(2), the Debtor may only protect the asset if an exemption applies. *Velis v. Kardanis,* 949 F.2d 78, 81-82 (3d Cir. 1991) ("Even if pension plan assets in the hands of a trustee are beyond the reach of creditors because not a part of the debtor's estate under § 541(c)(2), distributions made from the plan to the debtor would not enjoy such protection, in the absence of exemption under § 522(d)(10)(E).").

Accordingly, this court holds that the loan proceeds are property of the estate as proceeds of property of the estate under 541(a)(6), or are not property of the estate under section 541(c)(2), but became property of the estate when the Debtor borrowed the money out of the fund for non-exempt use. Thus the Trustee is entitled to turnover of the loan proceeds to him for distribution to the estate's creditors, unless the Debtor has a right to exempt the property.

## 2. Can the debtor exempt the proceeds?

The Trustee argues that equitable considerations prohibit the Debtor from amending his exemptions at this late stage. In general, a debtor may freely amend schedules throughout a case. Bankruptcy Rule 1009(a) provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). A party in interest may object to the amendment of exemptions only within 30 days after the amendment is filed. Fed. R. Bankr. P. 4003(b)(1). The burden of proving that the exemption is not properly claimed is on the objector. Fed. R. Bankr. P. 4003(c).

The Trustee asserted that the amendment of the exemption should be denied based on the debtor's bad faith, including that he concealed the loan proceeds. Indeed, courts have held that an amendment of an exemption claim "may be denied upon a showing of bad faith or prejudice to creditors or third parties." *Matter of Yonikus,* 996 F.2d 866, 872 (7th Cir. 1993) (citing *Matter of Doan,* 672 F.2d 831, 833 (11th Cir. 1982)).

However, those decisions were expressly overruled by the Supreme Court in *Law v. Siegel,* 134 S. Ct. 1188, 1196 (2014). The Court there stated "[The chapter 7 trustee] suggests that those decisions reflect a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct. For the reasons we have given, the Bankruptcy Code admits no such

power." *Id. See also United States v. Colon Ledee*, 772 F.3d 21, 29 (1st Cir. 2014) (suggesting that *Hannigan v. White (In re Hannigan)*, 409 F.3d 480 (1st Cir. 2005) (also cited by the trustee here) was overruled by *Law v. Siegel*). Courts have since held that *Siegel* applies to prevent equitable estoppel, bad faith or prejudice to creditors as reasons for denying amendment to exemptions. *See, e.g., Gray v. Warfield (In re Gray)*, 523 B.R. 170, 175 (B.A.P. 9th Cir. 2014); *In re Saldana*, 531 B.R. 141, 161 (Bankr. N.D. Tex. 2015); *In re Lua*, 529 B.R. 766, 773 (Bankr. C.D. Cal. 2015); *Mateer v. Ostrander (In re Mateer)*, 525 B.R. 559 (Bankr. D. Mass. 2015); *Neblett v. Gress (In re Gress)*, 517 B.R. 543, 548 (Bankr. M.D. Pa. 2014). Therefore, the Trustee may only object to the Debtor's exemption on the basis that it is not validly taken, not that the court should deny amendment of the exemptions on equitable grounds.

The Supreme Court allowed that exemptions taken under state law might include bases for denial including misconduct, "[b]ut *federal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code." *Law v. Siegel*, 134 S. Ct. at 1197 (emphasis in original). Here the Debtor opted to claim exemptions under federal law, thus state law is not applicable.

But the *Siegel* court denied the trustee's attempt to surcharge the debtor's exemption holding that there was no such right under the Bankruptcy Code. Here, the Bankruptcy Code does provide a basis for denying the exemption: section 522(g). That section provides that a debtor may exempt property

> that the trustee recovers under section . . . 542 [or] . . . 550 . . . , to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (B) the debtor did not conceal the property[.][7]

11 U.S.C. § 522(g).

"In short, . . . a debtor will not be allowed to claim an exemption in bankruptcy in property which he attempted to transfer in fraud of his creditors." *Coleman v. Cmty. Trust Bank (In re Coleman)*, 285 B.R. 892, 909 (Bankr. W.D. Va. 2002), *aff'd in part and rev'd in part on other grnds*, 426 F.3d 719 (4th Cir. 2005).

The submissions of the parties reflect nothing but a voluntary transfer on the Debtor's part here. The Trustee alleges the Debtor intentionally concealed the property by dint of not disclosing it on his original schedules, not revealing it at the 341 meeting, and then only amending schedules to include the loan proceeds after this adversary proceeding was filed. The defendants did not respond to the bad faith allegation.

---

[7] Section 522(g) also provides that a debtor may exempt recovered property if he or she could have avoided the transfer under section 522(f)(1)(B), which provides for avoidance of certain nonpossessory, nonpurchase-money security interests, not applicable here.

Because parties rarely admit to fraudulent intent, courts turn to certain badges of fraud to determine intent.

> Such "badges" include: (1) a close relationship between a transferor and transferee; (2) a transfer in anticipation of a pending lawsuit; (3) a transferor/debtor who was insolvent or in poor financial condition at the time of the transfer; (4) the transfer of all or substantially all of the debtor's property; (5) a transfer that so completely depletes the debtor's assets that the creditor was hindered or delayed in recovering any part of the judgment; and (6) the shifting of assets by the debtor to a corporation wholly controlled by him.

*In re Corona*, 08-15924 (DHS), 2010 WL 1382122, at *13 (D.N.J. Apr. 5, 2010) (determining intent for purposes of section 727(a)(2)(A), which precludes discharge if the debtor, with intent to hinder, delay, or defraud, transferred or concealed property of the debtor or of the estate).

Here, the Debtor failed to disclose the loan or its proceeds, despite having obtained the loan approval just days before filing his petition. He then transferred over two-thirds of the proceeds out of a jointly-owned bank account into his non-debtor wife's solely-owned account. He likely retains control of the funds since the transfer was to an insider. *See* 11 U.S.C. § 101(31)(A)(i). On the other hand, he did disclose "PERS – not property of debtor estate" on his original Schedule B, suggesting that he did not believe the loan proceeds needed to be disclosed. Thus, the court considers this to be a genuine issue of material fact necessitating a trial.

> In evaluating whether a debtor should be barred from claiming property as exempt, intent to conceal and bad faith are factual determinations to be made by the court based upon the evidence presented and an examination of the relevant surrounding circumstances.

*Agin v. Daniels (In re Daniels)*, 452 B.R. 335, 351 (Bankr. D. Mass. 2011).

Should the Debtor convince the court that section 522(g) does not preclude his exempting the proceeds, he first seeks to exempt them pursuant to section 522(d)(10)(E).[8] That section provides:

> (d) The following property may be exempted under subsection (b)(2) of this section:

> (10) The debtor's right to receive—

> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length

---

[8] The trustee first argued that the loan proceeds could not be exempted under New Jersey Statute § 25:2-1(b), as that statute concerns distributions from a plan. However, the Debtor chose to use the federal exemptions, so the New Jersey statute is not relevant. Section 522(d)(10)(E) does not include the same "distribution" language.

of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
> (ii) such payment is on account of age or length of service; and
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E). Assuming the exception does not apply, relevant here is that a debtor may exempt his or her right to receive a payment under a pension, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

The Trustee argues without citation that this exemption is limited to payments "on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor," but instead the Debtor borrowed against his future right to receive those payments. In other words, the Trustee argues that only payments made for those uses—illness, disability, death, etc.—are exemptible under section 522(d)(10)(E). The defendants did not respond to this argument, but instead still argued that the loan was not complete until the Debtor cashed the check.

The Trustee's assertion appears to be supported by the Supreme Court in *Rousey v. Jacoway*, 544 U.S. 320 (2005), which, in considering whether an IRA could be exempted under 522(d)(10)(E), stated:

> Under the terms of the statute, . . . the Rouseys' right to receive payment under their IRAs must meet three requirements to be exempted under this provision: (1) The right to receive payment must be from "a stock bonus, pension, profitsharing, annuity, or similar plan or contract"; (2) the right to receive payment must be "on account of illness, disability, death, age, or length of service"; and (3) even then, the right to receive payment may be exempted only "to the extent" that it is "reasonably necessary [to] support" the accountholder or his dependents. § 522(d)(10)(E).

*Rousey v. Jacoway*, 544 U.S. at 325-326.

But as this was stated in *dicta*, this court is unwilling to decide whether pension loan proceeds are excluded from the purview of section 522(d)(10)(E). However, the payment may only be exempted to the extent it is reasonably necessary to support the Debtor or his dependents. Here, the Debtor asserted neither, raising another genuine issue of material fact precluding judgment.

But if not allowed to exempt the proceeds under 522(d)(10)(E), the Debtor intends to amend his exemptions again to exempt the proceeds under section 522(d)(5). The so-called "wildcard" exemption provides that the Debtor may apply "$1,225 plus up to $11,500 of any unused amount of the exemption provided under paragraph (1) of [section 522(d)(1)]." 11 U.S.C.

§ 522(d)(5). This exemption likely is valid. But the court will only face that determination if the Debtor hurdles section 522(g).

### B.  Count Two – Avoidance of unauthorized postpetition transfer

The Trustee seeks to avoid the transfer of $10,750 of the loan proceeds from the Debtor to his wife pursuant to section 549(a) of the Bankruptcy Code, which provides:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
> > (1) that occurs after the commencement of the case; and
> > (2)     (A) that is authorized only under section 303(f) or 542(c) of this title; or
> > (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). Federal Rule of Bankruptcy Procedure 6001 places the burden of proving the validity of the transfer on the entity asserting that validity. Once avoided, section 550 permits a trustee to seek to recover a transfer from an initial transferee, an entity for whose benefit the transfer is made, or any immediate or mediate transferee of the initial transferee. 11 U.S.C. § 550(a).

The Trustee alleged that the proceeds were property of the estate, and that the transfer was not authorized by the Trustee[9] or the Bankruptcy Code, therefore the transfer is avoidable pursuant to section 549. While the defendants admitted that the transfer took place on October 31, 2014, which was the day after the Debtor filed his bankruptcy petition, they generally denied that the proceeds were recoverable as an unauthorized postpetition transfer, presumably relying on its argument that the proceeds either are not property of the estate or are exemptible.

As the transfer did take place postpetition and the defendants did not assert the validity of the transfer, the Trustee has stated a claim under section 549. But this only takes the court right back to the discussion of Count One, as section 522(g) applies to recoveries of property pursuant to section 550.

Thus, judgment on the pleadings will be granted to the trustee solely on the issue of the funds being property of the estate subject to recovery by the trustee, but denied as to the Debtor's ability to amend his exemptions. A trial will be scheduled to determine whether the Debtor exercised the requisite intent to trigger section 522(g).

### C.  Count Three – Accounting

The Trustee here states that he "may not have access to sufficient records of the Debtor to assure that he can identify all mediate transfers that may be avoidable pursuant to 11 U.S.C. §§ 549 and 550." Thus he seeks an accounting from all defendants of all transfers of the proceeds.

---

[9] Section 549(a)(2)(B) refers to authorization by the court or the Bankruptcy Code, not the trustee, as the latter does not have the power to enter orders in the case.

The Trustee provides no Code citation or case law authority supporting this relief. *See In re Prosser*, 06-30009, 2009 WL 3270765, at *15 (Bankr. D.V.I. Oct. 9, 2009) (denying relief where legal and factual basis for an accounting not identified). But section 542(a) provides for an accounting of property of the estate held by a third party in the context of a turnover action. *In re Trinity Innovative Enterprises, LLC*, 09-20579REF, 2010 WL 5462495, at *6 (Bankr. E.D. Pa. Dec. 27, 2010). Section 542(a) states:

> (a) [A]n entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, **and account for**, such property or the value of such property.

11 U.S.C. § 542(a) (emphasis supplied).

When a claim for turnover is adequately pled, an accounting may also be merited. *In re Trinity Innovative Enterprises, LLC*, 2010 WL 5462495, at *6. *See Am. Home Mortg. Holding v. Showcase of Agents, LLC (In re Am. Home Mortgage Holding)*, 458 B.R. 161, 171 (Bankr. D. Del. 2011) (finding plaintiff stated a claim for an accounting in alleging an absence of a legal remedy, plus the existence of mutual, complex accounts, as required under Illinois law).

Alternatively, the Trustee may have meant to proceed under section 542(e), which provides:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. § 542(e). This would apply if the Trustee merely wants more bank accounts or other, similar financial statements, showing where the money went, as opposed to having the defendants create a document accounting for any subsequent transfers. *See In re Vaughan Co., Realtors*, 11-10-10759 JA, 2015 WL 4498748, at *5 (Bankr. D.N.M. July 23, 2015) (stating that section 542(e) applies to existing documents, not the compilation of an accounting). Since the Trustee directed the count at only the defendants, it is possible that he only meant for those parties to turn over additional documents.

As an accounting is only merited should the Trustee prevail on Counts One and Two, the court will reserve judgment on this count until after trial on the others.

## VI.    CONCLUSION

The Motion is granted in part only to the extent that the court finds that the loan proceeds/funds are property of the estate, but denied as to all other matters. The Cross-Motion is denied in its entirety. The court holds that the loan proceeds/funds are property of the estate, but

cannot now rule on whether the Debtor may nevertheless exempt the property. Based on the foregoing, to the extent that genuine issues of material fact exist as to intent, and the legal issue of whether sections 522(g), 522(d)(10)(E), and 522(d)(5) apply, the Motion and Cross-Motion are denied. A trial will be scheduled on these issues and the parties are directed to submit a joint pretrial schedule.

On March 15, 2016, the Trustee filed an objection to amended exemptions in essentially the same form as one of his responses to the defendants' opposition filed in this adversary proceeding. As the court has just discussed those arguments of the Trustee, the objection will be heard in conjunction with the trial.

A form of Order accompanies this opinion.

The court reserves the right to revise its findings of fact and conclusions of law.


/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: March 17, 2016